IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

| | |
|---|---|
| Ronald Harris, | I |
| Plaintiff, | I |
| | l |
| v. | I |
| Thomas J. Dart, | I |
| Salvador Godinez, | |
| Chester Plexico, | I |
| M. Martinez, | |
| Officer Martieri, | l |
| John Mueller, | |
| Lt. Blunt, sued in their individual and official capacities, | I |
| County of Cook, Cermak Health Service of Cook County, | I |
| | l |
| Defendants. | |
| | I |

OCT - 8 2010  aew
10 - 8 -10
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

10 C 6666
Judge John W. Darrah
Magistrate Judge Morton Denlow

Original

original

## I. PRELIMINARY STATEMENT

This civil rights action filed by Ronald Harris, pro-se, brought pursuant to 42 U.S.C. sec. 1983 [42 U.S.C.S. sec. 1983] and American with Disabilities Act, 42 U.S.C. sec. 12101-12213, to redress numerous violations of his clearly established rights under the cruel and unusual punishment clause of the Federal Constitution's Eighth Amendment, challenging the condition of his confinement, seeking monetary damages, injunctive relief, criminal penalties under 18 U.S.C. sec. 242 and Constitutional Tort. And the Due Process Clause and 14th Amend.

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under 28 U.S.C. sec. 1331 and 1343 (3) and (4). This matter in controversy arise under 42 U.S.C. sec. 1983.

2. Venue properly lies in this District pursuant to 28 U.S.C. sec. 1391 (b) (2) because the events giving rise to this cause of action occurred at the Cook County Jail, which is located within the Northern District of Illinois, Eastern Division.

## III. **PARTIES**

3.    Plaintiff, Ronald Harris is a citizen of the United States and a resident of the State Of Illinois, is and was, at all relevant times hereto detained in the custody of the sheriff at the Cook County Jail. ("CCJ")

4.    Defendant, Thomas J. Dart, ("Dart") sued herein in his individual and official capacity, as the Sheriff of Cook County, Dart is legally responsible for the overall operations of the Sheriff's Office and CCJ.

5.    Defendant, Salvador Godinez, ("Godinez") sued herein in his individual and official capacity as Executive Director of CCJ, Godinez is legally responsible for the operation of the CCj, and each and every Division and Department of CCJ.

6.    Defendant M. Martinez, ("Martinez") sued herein in her individual and official capacity, as the Superintendent of Division Ten and Acting Chief of Security for that Division, and is legally responsible for the security and walfare of detainees housed in that Division.

7.    Defendant, Chester Plexico, ("Plexico") sued herein in his individual and official capacity, as a Captain at the CCJ, Plexico is responsible for the security and walfare of detainees housed in Division Ten.

8.    Defendant, John Mueller, ("Mueller") sued herein in his individual and official capacity as the Supervisor of Program Services for the CCJ, Upon information and belief, Mueller's position include acting as the keeper of all detainee grievances and administering the grievance process. Mueller is charged with the responsibility  of processing detainee grievances, and forwarding them to the next level of the grievance system if they cannot be resolved at his level.

9.    Defendant, Officer Marteri, ("Martieri") sued herein in her individual and official capacity, as a correctional officer at the CCJ, and was assigned to Division Ten. Martieri is legally responsible for the security and walfare of detainees housed in Division Ten.

10.    Defendant, Lt. Blunt, (Blunt) sued herein in her individual and official capacity as the lieutenant for the CCJ, Blunt is responsible for the security and walfare of detainees housed in Division ten.

11.    Defendant Cook County is a County in the State Of Illinois, Cook County oversees an is legally responsible for the Cook County Department of Corrections, which inturn operates the CCJ, Cook County also oversees and is legally responsible for the Cook County Department of Health, which operates Cermak Services of Cook County.

### IV.  EXHAUSTION OF
### ADMINISTRATIVE REMEDIES

12.    Even though the Plaintiff believe that the grievance process is unreliable he still filed Six grievances as it was available at the CCJ to try and solve his multiple problems concerning allegations in his complaint, these grievances were as follows;

13.    On December 19th, 2009, Plaintiff filed a grievance concerning allegations in his complaint, (i.e., clean mattress, uniforms, and sheet.) instead of providing the Plaintiff with a clean mattress, sheet, and uniform, his grievance was processed as a "request".. nothing was ever done concerning this grievance.

14.    On January 5th, 2010, Plaintiff filed a grievance concerning allegations in his complaint, (i.e., him being assaulted and the use of poppers on the tier, which was used to gain access into his cell-in-order to assault him-by by-passing security) this grievance was processed as a "request"... there was never and investigation into the assaults or the use of poppers in the division.

15.    On January 20th, 2010, Plaintiff again filed a grievance concerning the allegations in his complaint (i.e., soiled sheets and mattress as being the proximate cause of this rash, and that the rash had spread to his face upper arms, and chest) instead of this grievance being refferred to medical staff, and or an investigation into the cause of his rash..not only because of the plaintiff having a rash, but, because inmates have been complaining of developing a rash on other tiers, the plaintiff's grievance was processed as a "request".

16.   On February 4th, 2010, Plaintiff filed a grievance concerning claims
in his complaint, (i.e., that Defendant Martierivandalized his cell and
had   inmates use a popper to enter his cell and ███████████, and steal
commissary  and other items, then locked the door back with a plastic shower
shoe) this grievance was processed as a "request".

17.   On February 7th, 2010, Plaintiff filed a grievance concerning the
claims in his complaint, (i.e., failing off the top bunk and failing to
provide away to occupy the top-bunk and the injuries being substained as
a result) this grievance was processed as a "request"

18.   Defendant Mueller, Supervisor of program Services is the only
"person" that has the authority to change grievances into "request" inwhich
he did exactly that, (taking the plaintiff's grievances and converted them
into "request",)thereby, taking away the plaintiff's right and or any
opportunity to appeal any decisions and made the grievance process unavailable.

19.   In fact, the pre-printed grievance from it-self, has a check box
on the top right hand side that allows grievances to arbitrarily converted
into "request", which renders the entire grievance process unavailable,
even though the jail already have a "form" spacifically  for "request",
if that was the Plaintiff's intention.

20.   On or about March 20th, 2010, Plaintiff wrote two letters, one letter
to Defendant, Thomas J. Dart, sheriff of the Cook County Jail, and the other
to Defendant, Salvador Godinez, Executive Director of the Cook County Jail
conveying to them all the problems that the Plaintiff faced, including the
claims in his complaint as of the filing of this complaint, the Plaintiff
have not received a response from either of these officials/Defendants'.

21.   Upon information and belief, Defendant, Mueller and Defendant Martieri,
committed such wrongful acts willfully and wontonly because they were done
with either actual or deliberate intention to stop the process or with utter
indifference and conscious disregard for the safety and well being of the
Plaintiff.

22.    Plaintiff in this action have exhausted all of his administrative remedies available to him at the jail, because Plaintiff have exhausted all remedies, Plaintiff is deemed to have exhausted such remedies as a matter of law.

23.    The problem Plaintiff faced with the grievance process at the jail is supported by the findings of the United States Department of Justice Report, ("DOJR")

      The DOJR noticed a number of serious concerns with the inmate grievance process at the Cook County Jail, including the failure of Cook COunty jail staff to follow written grievance procedures. (See insert from DOJR attached)


## V.    STATEMENT OF CLAIMS

24.    At all relevant times herein, Defendants were "persons" for purpose of 42 U.S.C. sec. 1983 and acted under color of law to deprive the Plaintiff of his Constitutional rights as set forth more fully below.


## VI.    STATEMENT OF FACTS

25.    Upon arriving at the Cook County jail, ("Jail") the Plaintiff was housed in division ten, where he was given by jail employees (C/0's) a soiled and recently used inmate uniform, that was torn in the crouch area, and along the entire right leg seam, which the Plaintiff was forced to wear, and a soiled and recently used single sheet that was torn, and didn't fit the mattress that was given to him, that was as well, soiled, uncleaned, and fetid, that gave off an offensive smell, and heavily stained from prior use. (i.e., blood stains and other undescribable stains)


26.    Plaintiff was then assigned to tier 4-A, where the transporting C/O informed the Plaintiff that he needed to "watch-out" for himself on 4-A and that division ten was a psych-division, he also informed the Plaintiff that 4-A was currently on lock-down due to excessive fighting, and because they

[C/O's] found shanks on the tier." 1.

27.    Fearing for his life, the Plaintiff unformed the C/O that he [the Plaintiff] was not a "psych or a mentally-ill patient", and that "there was no reason or need what so ever for him to be placed in that from of environment," the C/O then informed the Plaintiff that he was just following orders and to file a grievance, if he didn't like it.

28.    Plaintiff was then forced into cell 19, locked in with a mentally-ill inmate, looking through the "chuck-hole," 2. the tier C/O stated that this inmate that the Plaintiff was looked in with was always "heavily medicated" and "wouldn't even know he was his cellee" and that this inmate consumed daily five different types of psychotropic medication(s).

29.    Taking the only bunk available, which was approximately 5½ feet from the floor level, the only way that the Plaintiff could utilize the bunk was to climb on top a stianless steel toilet, then climb on top a stainless steel sink, then at the same time while balancing him-self, would have to jump over 3½ feet to the top bunk. The same sequence would have to be used by the Plaintiff, but in reverse in order for the Plaintiff to get down form the top bunk.

_____

1.    "shank" is the term used by inmates and C/O's, representing a knife.

2.    "Chuck-hole" is a space made into the door of the cell in order for inmates to receive things threw while on lock-down.

30.     Plaintiff did inform Defendants' Lt. Blunt and Plexico on more

then one occasion that he [the Plaintiff] was just not able to climb,

balance, then jump 3½ feet in order to occupy the top bunk, and explained

to both Lt. Blunt and Plexico, that he is on the blood thinner Coumadin,

do to a clot in his leg, and that he has gout, and needed to be allowed

a bottom bunk, both Defendants' stated that there was nothing they could

do, but told the Plaintiff sarcastically  to file a grievance, when the

Plaintiff requested a grievance form, from the Defendants' he was

questioned as to why he needed one, when the Plaintiff again explained his

reasons for the need of the grievance it was denied.


31.     Approximately a week later, Plaintiff, again, spoke to Lt. Blunt,

about his situation described in paragraphs 1 through 30, with a smirk,

Lt. Blunt told the Plaintiff that he had to take what was available, at this

time, Plaintiff also informed Lt. Blunt, and Plexico, that he was given a

soiled mattress and a soiled torn sheet, and that he [the Plaintiff] needed

at least a better mattress, and two clean sheets, one to cover the mattress

completely with, and the other to cover himself with.


32.     Again, with a smirk, Lt. Blunt stated that "Cook COunty does not

fund the jail enough money to give every inmate, underwear, tissue, clean

sheets or a mattress," Defendant Lt. Blunt, also states that the mattress

that the Plaintiff had was the "best" looking one she had seen in a very

long time. 3

_____

3.     Mattresses are kept in the basement of the division, on the floor
       staked on top one another , where mice or and rats or any other four-
       leg creature could crawl or climb.

33. Plaintiff, then explained to Defendant Lt. Blunt, while Defendant Plexico stood near by in hearing rang, that the dirty mattress, and dirty torn sheet was the cause of his rash, and discomfort, sarcastically, Lt. Blunt, asked the Plaintiff, "if he tried showering, then to file a grievance.

34. Plaintiff is not only forced to sleep on a dirty mattress, and a dirty torn sheet, but a dirty mattress, and torn sheet, with stains, and dirt, that's not even his dirt, and have no idea "what", prior inmates may have had or done to the dirty torn sheet or mattress he is forced to use and sleep on.

35. On February 19th, 2010, the doctor prescribed an order for the Plaintiff to be allowed a bottom bunk, because of his fall from the top bunk, after showing this copy of the prescription to Defendant Plexico, and tier C/O, nothing was done. On March, 24th, 2010, the doctor again, gave the Plaintiff a prescription, ordering a bottom bunk, writing, "Please" on the order, after showing this copy to Defendant Blunt, and to Plexico, nothing was done.

36. As a result of Defendants' wrongful conduct, and deliberate indifference, the Plaintiff fail 5 feet from the top bunk onto the concrete floor of the cell, and suffered injuries to his hand, and finger, chipping a bone, and damaging ligaments, causing tendinitis, and chronic back pain, Upon information and belief, Plaintiff further suffers from degeneration to his vertebrea, several herniated disk.

37. Plaintiff also believe that his rash, that he developed since being in division ten, on tier 4-A.. as a result of the sheets and or the mattresses.

*1*

## VIII.   FAILURE TO PROTECT
### AND
### EXPOSURE TO UNSAFE CONDITIONS
### UNPROFESSIONALISM BY STAFF

38.     Plaintiff re-alleges and incorporate by reference Paragraphs 1 though 37 as if alleged herein.

39.     On or about December 23rd, 2009 . Plaintiff had a conversation with Defendant Martieri, concerning him [Plaintiff] being housed with a psych inmate, and being in a psych division, and the fights he, [the Plaintiff] had with his cellee.

40.     Plaintiff then requested to be moved at least to another cell, away from this inmate.

41.     Defendant, Martieri then looked up the Plaintiff  on the computer in the control area, immediately after doing so, Defendant Martieri, shouted towards the Plaintiff, "You have a sex case", "You need to check into p.c.,  (Protective Custody) " I don't like sex-offenders" " I know People in this division that will kill yo! ass"

42.     Walking away, back onto the tier from the control area, Defendant Martieri, followed the Plaintiff making loud comments about the Plaintiff having a sex-case, stating, "we don't like sex-offenders here [Harris], you have a problem with women I see."

43.     Defendant Martieri then called an inmate, by gestering with her finger, to the control area, Upon information and belief, Martieri informed this mentally-ill inmate of the Plaintiff's case, because of his behavior change towards the Plaintiff.

44.   When this inmate returned to the tier, this inmate questioned the
Plaintiff about his charges, when suddenly out of no wear, the Plaintiff
was attacked by this and another inmate in front of Defendant Martieri,
being punched in his face several times, and about the body with extreme
force and power, then was told that he better move out of the division,
and to check into p.c.,(meaning Protective Custody.)

45.   After the attack, Plaintiff was told by Martieri, that he had to
lock-up, (meaning he had to go to his assigned-cell) When the Plaintiff
requested medical attention from Martieri, she denied it.

46.   Plaintiff suffered swollen knots about his face and a busted lip.

47.   About and hour later, Plaintiff was in his assigned-cell, in his
assigned-bunk as described in paragraphs 1 through 37, when the door to
his assigned-cell popped-open, popped-open by these two inmates, that
attacked the Plaintiff earlier, that used a make-shift devise, inmates
in this and other divisions call a "popper", [this devise is made up of a
piece of torn sheet, and a piece of playing card, used in sequence with
tooth-paste, to by pass locked-cell doors in the division.

48.   Once inside, the Plaintiff was attacked again, being pulled from
the top bunk to the concrete floor, then hit in the face, chocked,
kicked in his groins an punched about the body.

49.   Upon information and belief, Martieri, was present on the tier, when
this second attack occurred, as well, believe that it was motivated by her.



Plaintiff

50.    On another occasion, while Plaintiff was in the shower ("arena"
area showering, ( inmates call this the arena, not only because of it's
location on the tier, but, because it's located in a blind spot, hitten
from camera view, but, also because it's surrounded by low walls) when
a towel was thrown over Plaintiff's head from behind, he, [Plaintiff]
was then hit in the face, with extreme force, knocking him to the
floor of the arena, where he was kicked and popped on the rear-in with
a towel, when the Plaintiff stood to dress his-self, he noticed Martieri
in the control area of the tier, who gestered for him to come to the
control area, Plaintiff beliefs that Martieri not only motivated this
attack, but seen the whole thing.

51.    When the Plaintiff arrived at the control area, Plaintiff, begain
to explain what happened, he was interrupted by Martieri, and was told
with a grin, that she had seen everything, then sarcastically ask the
Plaintiff "why you didn't fight back" "if it was a girl you would have".

52.    Despite Defendant's Martieri's Knowledge of Plaintiff's injuries
in this assault, and request to see a doctor, Martieri denied access
to any medical attention.

53.    Plaintiff was told by Defendant Martieri, that he needed to lock-
up, (in his cell) in fact, the Plaintiff didn't receive any medication
for that day.

54.    Upon information and belief, all of the attacks were motivated by
the comments, and control of Defendant Martieri or encourged said mentally-
ill inamtes to wage these attacks against the Plaintiff because of this
charge.

56. Upon information and belief, it is a common practice at the jail that C/O's look up inmates charges and inform the C/O in the unit of the charge, in cases against women and children, then inform other inmates to motivate such attacks.

57. As a direct result of the deliberate indifference, conduct and practice and or custom, Plaintiff suffered physical, mental and emotional injuries and was in constant fear of his life and well being.

## Ix. CELL SEARCH

58. Upon information and belief, Defendant MArtieri, with the purpose and intent of harrassing has searched the Plaintiff's cell 11 times in six day period and each time has left the Plaintiff's cell and legal papers in a state of disarray, but not limited to stepping on his legal papers and times where water of some sort of liquid had been poured over or on the Plaintiff's legal work and or pictures torn that had sentimental value.

60. There are times that the Plaintiff had returned from Cermak and found commissary missing and or open and or poured over his bunk or walked on and or stomped on crushed to the point of being unusable.

61.     Plaintiff again spoke to Defendant Plexico, about the multiple
shake-downs, and was told "what do you expect, this is Cook County
jail" "file a grievance", when the Plaintiff did file a grievance, it
was turned into a request, that after  receiving the response, Plexico,
told the Plaintiff that he  is now considered a problem.

62.     On or about February 5th, 2010, while Plaintiff was in his assigned
cell, was awaken by another inmate (not his cellee) who again used this
makeshift devise described in paragraphs 1 through 48, to open the Plaintiff's
assigned-cell door.

63.     This inmate informed Plaintiff that the tier C/O wanted him at the
control area, when the Plaintiff arrived at the control area, he notice
that there was no C/O present, but did notice that inmates were fighting
in the "Arena" and a crowd gathered around the walls of the "Arena", yelling
egging the fight on, when the Plaintiff looked closer, he noticed three
mentally-ill inmates fighting two-others, this fight went on approxately
3 to 4 minutes.

64.     Upon information and belief, each of these mentally-ill inmates
used the popper to get out of there cells, the same devise used to open
the Plaintiff's assigned-cell-door to attack him.

65.     Defendant's are well aware of inmates in division ten having and
using these devises called "Poppers" to open there cell doors and other
inmates doors for the purpose of fighting or to hold gang meetings in the
"Arena" when they are suppose to be secure in there assigned cells.

66.    Defendant's are also aware, that each of the cell-doors on 4-A has
toothpaste in and around the lock mechanism abling the popper to be set in
place, the tooth-paste is white in color, and is obvious and very much so
visible to any naked-eye, but is ignored by the Defendant's and staff during
there daily walk through.

67.    Defendant's are well aware of the "Arena" and the "Alley" area of the
tier, not limited to the blind spots located on the tier, hidden from camrea
view and control area.

68.    Defendant's are very well aware that inmates use plastic shower
shoes to re-lock doors after using the Popper devise."

69.    Defendant's knew that by placing the Plaintiff among seriously mentally-
ill detainees would cause him serious harm or even death. The defendant's
and their employees failed to take reasonable steps to guarantee the Plaintiff's
safety or steps to protect him from violence at the hands of other inmates,
in addition, the Defendant's have failed to provide an adequate system to
investigate incidents of harm, including staff misconduct. The Defendant's
has failed to protect the Plaintiff and other inmates with akin. charges.

70.    Defendants' have filed to collect the devises inmates use called-
poppers and or change the locks  to cell-doors or to take reasonable steps
to stop inmates from using these type of devises, which contributed to two
of the attacks on the Plaintiff while in his cell. Not only do Defendants'
Dart, Godinze, Martieri, M. Martinez, Plexico, and Lt. Blunt know of this
practices, they encourage it.

71.     Finally, Defendants' have failed to adequately display blind-spots
on the tier, where a large number of fights take place, and where one of
the attacks on the Plaintiff took place.


72.     The above allegations demonstrates that the Defendants' Dart, Godinez,
Plaexico, Lt. Blunt, Matieri, Muller, M. Martinez, Cook County, and Cermak
Health Service of Cook County are deliberate indifferent to the Plaintiff's
safety, and that there training and supervision of employees fall-below
constitutional standards, in fact, over the past several decades, Cook
County jail and Cook County has been under an consent decree, that still is
under the jursidiction of the United States district Court for the Northern
District of Illinois, for the jail's continual deliberate disregard concerning
it's responsibilites to safety, staffing, environmental health and emergencies,
as well, over the past several decades, official are becoming extremely
decadent, (less worthy, deteriorating in standards) The Cook County Jail
is also governed by multiple other agreements and orders, that they treat
as unworthy of notice, despite the existence of these court order(s), a vast
number of unconstitutional practices, policies, and customs remain at the
Cook COunty Jail.


73.     The current court orders applicable to Cook County jail do not include
specific provisions governing the constitution concerns raised regarding
protection from harm, and inadequate medical-care or have not resulted in
lasting or effective corrective measures. As the United State Department of
Justice recently concluded, "Cook COunty Jail fails to adequately protect
inmates from harm and serious risk of harm from staff and other inmates,
(July 11th, 2008 Report of the Civil Rights Division of the United States
Department of Justice at 9)(hereinafter "DOJ Repaort"`a copy of the relevant
sections of report is attached hereto as exhibit A) DOJ press release indicated
in summarizing that scathing 98 page report, " The Cook County jail has

an obligation to provide conditions of confinement that do not offend the
constitution and to take reasonable steps and measures to protect inmates
from harm.... THis investigation clearly found that the jail failed that
test". (july 17, 2008 DOJ Report Press Release, attached hereto as exhibit
B at 2.) Defendants' policies and procedures - or lack thereof - are
responsible for the failures identified in the DOJ report and as alleged
through-out this complaint, which has caused direct physical harm and suffering
to the Plaintiff, and also created a constant serious risk of harm.


### X.   INADEQUATE MEDICAL CARE
### INADEQUATE MEDICAL STAFFING
### AND
### INADEQUATE MEDICAL CARE SYSTEM AS A WHOLE


74.    Plaintiff has to rely on jail authorities to treat any medical needs
that he may have, it Defendants' delay treatment or fail to do so, these
needs wouldn't be meet. Once a new arrival go through the initial processing-
in, any other medical needs he may need starts with the nurse, once the
nurse medicats the tier, the inmates would have to inform the nurse of any
problems he may be experiencing, the nurse then "decides" if the inmate needs
a medical request form, after requesting one.


75.    Upon information and belief, medical staff policy is to issue 20 to
30 medical request forms to its staff a day, for approximately 850 inmates.


76.    If the medical staff or nurse, sees the inmate as a "problem", the
nurse would deny the inmate a medical request form or delay access to treatment
alltogether, by delaying turning in or loosing the slip.


77.    If the inmate leaves the tier or the division for any reason, somewhere
within the compound, before his medication is passed-out, then return to

the tier, requesting his medication, medical staff will deny giving medication.

78.    In   the PLaintiff's case, he takes high-blood pressure medications, and
5mg of cummidin every day (a blood - thinner) for a clot that he has in his
leg, each week, the Plaintiff is transported to Cermak, (a Hospital Service
within the Jail) to get his blood-levels checked) when the Plaintiff returns
from the procedure, the tier officer would call despensary, to inform nursing
staff that he [the Plaintiff] did not get his medications due to him being
at Cermak, the officer would be then told, (happening on 5 different occasions)
"that the Plaintiff was not there when the tier was medicated, so medication
is denied. likewise, PLaintiff informed the nurse on 3-11 shift, on each one of
the occasions that he did not receive his medications on the 7-3 shift,
on one occasion, the plaintiff asked the female nurse her name, after she
denied his morning medications so that he could file a grievance, her response
was " Ms. Price, spell it right". on another occasion, the PLaintiff informed
a different female nurse that he didn't get his medications, because he was
called to Cermak, her response was, " I was at home, I have nothing to do
with that," on two different occasions, a male nurse told the Plaintiff,
that he couldn't give him his necessary medications because he worked the 3-11
shift. on another occasion, the PLaintiff was told by a male nurse to file
a grievance.

79.    On another occasion, Plaintiff turned in a medical request form, to
a female nurse, clearly stating injuries and other problems he received from
falling out of his bunk and a rash that covered a majority of his body, and
from being attacked, Upon information and belief, this medical request form
was intentionally misplaced by this female nurse.

80.   On another occasion, Plaintiff explained to another female nurse that he had given another female nurse a request-slip, and hadn't seen a doctor, and that he was still in extreme pain, and that him seeing a doctor was very important, and needed another form, this female nurse told the Plaintiff that since he had already filled out a form, there was no need to fill-out another one, and refused giving the Plaintiff another form, despite the fact that it's been two weeks, since he filled it out.

81.   On another occasion, Plaintiff was told by a female nurse, after he had taken the medication she handed him, that the cup contained all the medication he was suppose to take for the whole-day; the cup contained:

300 mg of Robackson= a painkiller,

6 mg of Cummadin= a bloodthinner,

10 mg of Stool-softner,

200 mg of Noratain= another ~~from~~ _form_ of pain killer. Normally, Plaintiff's medication is passed out on the 7-3 shift and 3-11 shift, but instead of this nurse giving the Plaintiff's medication as prescribed by the doctor, she took it upon herself to give out the medication as she felt, all-together, because she, worked a "double" the night before and was "tired" the following day, as a result, Plaintiff had to rush to force himself to throw-up (to vomit) the medication, because taking it as she gave it, would have killed the Plaintiff, further, Plaintiff was then denied his medication , as prescribed by doctors'.

82.   On two other occasions, the nurse claimed that they (nurse staff) had "ran-out" of medical request forms, and would not be getting any for several days.

83.   During each of the above occasions, Plaintiff suffered pro-longed, chronic back-pain, limited use of his right hand and limited mobility of his wrist, and emotional destress.

84.   All corrections and security functions at the jail are administered

by the Cook County Department of Corrections ("CCDOC") under the Cook County

Sheriff, Defendant, Thomas J. Dart, Health Care Service at the Jail is provided

by Cermak Health Service of Cook County ("Cermak") which is a part of Cook

County Bureau of Health, While the Health Service staff are County employees,

who are responsible for the health care of all jail inmates, they are not

employed by, or responsible to the Cook COunty Sheriff or CCDOC, the

complete division between corrections and health care operations at the jail,

results in serious administration(s) break-downs, and finger pointing. Regardless

of the administrative division, Cook County, and the Cook County Sheriff's

Office are responsible for the well-being of inmates, including, providing

adequate medical care for inmates medical needs.


## Cause Of Action

### Count I.

Violation Of Plaintiff's Fourteenth Amendment Right Based Upon Deliberate
Indifference To Unsafe Conditions of Confinement Against Defendants' Dart, Godinez,
Plexico, Lt. Blunt, Martieri, M.Martinez, Muller, Cermak Health Service of Cook
County, and Cook County for Injunctive Relief.


85.   Plaintiff re-allege and incorporate by reference paragraphs 1 through 84 as
if alleged herein.


86.   Defendants' are fully aware of these unsafe and inhumane conditions, and
is well aware of these conditions pose a substaintial risk of serious harm to
Plaintiff. these Defendants' failure to address theses conditions despite letters
and grievances constitute deliberate indifference and deliberate disregard for
the safety and well being of the Plaintiff.]

87.   Defendants' Dart, Godinez, Plexico, Lt. Blunt, Martieri, M. Martinez, Muller, and Cook COunty also failed to provide sufficient sanitary conditions, that on numerous occasions, Plaintiff have gone weeks without a clean change of clothes, sheets and was forced to sleep on a stained mattress.

88.   In short, the overall conditions that the Plaintiff was forced to endure were extremely harsh, and extremely unsafe, placing Plaintiff at a serious risk of harm that caused physical injuries.

89.   Defendants' failure to correct these conditions or policies, practice, customs, and acts that allowed these unsafe conditions of confinement to exist constitute unconstitutional punishment, and is a violation of Plaintiff's constitutional rights.

90.   As a direct and proximate result of these defendants' improper policies, practices, customs, and acts, Plaintiff suffered physical, emotional harm, and other damages.

91.   Defendants' policies, practices, customs, and acts constitute deliberate indifference to the Plaintiff's constitutional rights and violate the ~~fourth~~ amendment to the United States Constitution.
/ 14

92.   Upon information and belief, the deprivation of the Plaintiff's Constititional rights was caused by an official custom or policy of Cook COunty, and specifically at least one of the following situations was present as to every constitutional deprivation: (1) Defendants' had an express policy, that when enforced, caused the alleged constitutional deprivation, and injuries to the Plaintiff:

(2) Defendants' had a widespread practice, that although not authorized by written law or expressed policy, was so permanent and well settled as to constitute a custom or usage with the force of law: (3) Plaintiff's constitutional injuries was caused by a person with final policy-making authority with regard to such policies.

93.   As a proximate result of Defendant's unconstitutional policies, customs, and acts, Plaintiff have suffered, and will continue to suffer immediate, and irreparable injuries, including physical and emotional injuries and the risk of premature death, Plaintiff have no plain, adequate or complete remedy at law to address the wrongs described herein.

94.   The injunction sought by Plaintiff is necessary to prevent further and future injuries.

Count II.

**Deliberate Indifference To Unsafe Conditions Of Confinement Against Defendants' Dart, Godinez, Plexico, Lt. Blunt, Martieri, M. Martinez, Muller, Cermak Health service Of Cook County, and Cook County for Compensatory and Puntive Damages:**

95.   Plaintiff re-allege and incorporate by reference paragraphs 1 through 94 as if alleged herein.

96.   Based upon the above allegations, including those alleged in Count I. at paragraphs 85 to 94, compensatory damages are necessary in order to compensate the Plaintiff for his injuries and damages he have already suffered, and punitive damages are necessary to serve as a deterrent for similar wrongdoing concerning court decrees, and any agreements.

## Count III.

**Failure To Train And Supervise Against Defendants' Dart, Godinez, Cermak Health Service of Cook County, and Cook County for Injunctive Relief:**

97.    Plaintiff re-allege and incorporate by reference paragraphs 1 through 96, as if alleged herein:

98.    Defendants' have failed to adequate train and or supervise there employees under their control and supervision.

99.    Defendants' failure to adequately train and supervise their employees amounted to deliberate indifference to Plaintiff's constitutional rights.

100.   As an proximate result of Defendants' Dart, Godinez, Cermak Health Service Of Cook County, and Cook Countys' failure to train and supervise, Plaintiff have suffered, and will continue to suffer,  deprivation of rights secured under the United States COnstitution and law of the United States, Such deprivation are causing and will continue to cause immediate and irreparable injuries,  including physical and emotional injuries and a risk of death. Pliantiff have no plain, adequate or complete remedy at law to address the wrongs described herein,

the injunctive relief sought by the Plaintiff is necessary to prevent further injuries.


### Count IV.

**Failure To Train And Supervise Against
Defendants' Dart, Godinez, Plexico, Cermak Health Service Of Cook County,
and Cook County for Compensatory And Punitive Damages:**

101.    Plaintiff re-allege and incorporate by reference paragraphs 1 thru 100 as if alleged herein.

102.    Based upon the above allegations including those alleged in Count II. and III.. Compensatory Damages are necessary in order to compensate the Plaintiff for injuries and damages Plaintiff have already suffered and Punitive damages are necessary to serve as a deterrent for similar wrong-doings.

### Count V.

Violation of Article 1, Section 2 of the Illinois Constitution Based upon Deliberate Indifference to Unsafe /Inhumane Conditions Of Confinement Against defendants' Dart, Godinez, Plexico, Lt. Blunt, M. Martinez, Mueller, Martieri and Cook County:

103.    Plaintiff re-allege and incorporate by reference paragraphs 1 thru 102, as if alleged herein.

104.    Each Defendant is being sued for claims based upon acts they personally performed. Upon information and belief, each Defendant committed such wrongful acts willfully, and wantonly because they were done with either actual or deliberate intention to cause harm, or with utter indifference and conscious disregard for the safety and well-being of the Plaintiff.

105.    defendants' are fully aware of these unsafe conditions an that they pose a substaintial risk of serious harm. These Defendants' failure to address these unsafe conditions despite letters and grievances constitute deliberate indifference and deliberate disregard for the safety and well being of the Plaintiff.

106.    Defendants' Dart, Godinez, Plexico, Lt. Blunt, and Cook County fail to correct these unsafe conditions or policies, practices, customs, and acts, that allowed these unsafe conditions of confinement to exist, constitute unconstitutional punishment and is a violation of Plaintiff's Constitutional Rights.

107.   As a direct and proximate result of these Defendants' improper policies, practices, customs and acts, Plaintiff suffered physical and emotional injuries and other damages.

108.   Defendants' policies, practices, customs, and acts constitute deliberate indifference to the Plaintiff's constitutional rights and violate Article 1 section 2 of the United States Constitution.

109.   Upon information and belief, the deprivation(s) were caused by and official custom or policy of Cook County, and specifically at least one of the following situations was present at to every constitutional deprivation: (1) Defendants' have an express policy that, when enforced caused the constitutional deprivation: (2) Defendants' have a widespread practice that although not authorized by written law or express policy was so permanent and well settled at to constitute a custom or usage with the force of law. (3) Plaintiff's constitutional injuries was caused by a person with final policy-making authority with regard to such policies.

110.   As a proximate result of Defendants' unconstitutional policies, practice, customs and acts, Plaintiff have suffered and will continue to suffer immediate and irreparable injuries, including physical, psychological and emotional injuries and risk death.

111.   Plaintiff have no plain adequate or complete remedy at law to address the wrongs described herein, the injunctive sought is necessary to prevent further injuries.

### Count VI.

#### (Negligence Against defendant Dart)

112.   Plaintiff re-allege and incorporate by reference paragraphs 1 thru 111 as if alleged herein.

113.   Defendant Dart has stated that he operates the Cook County Jail in a manner designed to "meet and exceed the standards of the American Correctional Association and the Illinois Department Of Corrections Jail and Detention Standards Unit".

114.   Accordingly, Defendant Dart has voluntary assumed a duty to the Plaintiff to meet and exceed these standards.

115.   Defendant Dart's policies, practies, customs and acts alleged above fail(ed) to meet those standards and have breach his duty to the Plaintiff.

116.   As a proximate result of Defendant Dart's breach of his duty to the Plaintiff, Plaintiff have suffered physical, mental and emotional damage.

## VII. Jury Trial
## Demanded

117.   Pursuant to Rule 38(b) of the Federal Rule of Civil Procedure, Plaintiff hereby demand a trail by jury on all claims giving rise to such right.

## VIII.  Prayer For Relief

WHEREFORE, the Plaintiff, Ronald Harris, respectfully request that this Honorable Court:

(a) Issue an infunction ordering defendants' to rectify the complained about conditions, including but not limited to:

## Safety And Supervision

limited to undamaged clean linens, including towels, as needed, two bed
sheets, an needed, etc. on a weekly basis.


V.   To remove from circulation any torn or damaged clothing, linens
and or mattresses.


## Inmate Grievance Procedure


I.   Develop and implement policies and procedures to ensure inmate(s) have
access to an adequate grievance process that ensure that grievance are processed,
and legitimate grievance addresses and remedied in a timely manner, responsé(es)
are documented and communicated to inmates.


II.  Ensure that grievance forms are available on all units on all shifts
in English and Spanish.


III. Ensure that inmates grievances are screened for allegations of staff
misconduct, and if the incident or allegation(s) meet established criteria,
refer for investigation.


## Medical Care


I.   Provide timely medical appointments and follow-up medical treatment,
Ensure inmates receive treatment that adequately address their serious medical
needs.


II.  Ensure that medical staff are adequately trained to identify inmates
in need of immediate or chronic care, and provide timely treatment or referrals

I.  Ensure that Correctional Staffing, and Supervision levels are appropriate to adequately supervise inmates.

II. Ensure that staff adequately and promptly report incidents.

III.  Develope a process to track any serious incidents that capture all relevent information including; location, any injuries, if medical care is provided, reviewing supervisor and result, remedy taken, and administrative sign-off.

IV.  Conduct regular inspections of cells and cell-doors.

V.  To house "non-psych" inmates in environment separate from "psych-inmates".

VI. To change and or purchase new locks to cell-doors in division ten.

VII.  To install cameras and or provide an adequate way to view the blind-spots of the tiers in division ten.

VIII.  Provide a safe and adequate way to occupy the top bunk an or a way to occupy the top-bunk.

## Sanitation And Environment Conditions

I. Develop and implement policies and procedures to ensure adequate cleaning and maintence of cells with meaningful inspection process(es) and documentation, not limited to establishing daily cleaning requirements for toilets, showers and tiers in division ten.

II. Ensure prompt and proper maintence for showers, toilets and sink units through-out the tier(s).

III.  Destroy any mattress(s) that cannot by sanitized, to inspect and replace as often all frayed and cracked mattresses, and to remove all mattresses from the floor of the basement to proper holding areas off the floor.

IV.  Provide properly sized and undamaged clothing and uniforms, that are cleaned weekly with sufficient or adequate soap poweder or detergent, not

for such inmate(s).

## Access To Health Care

I. Ensure inmates have adequate access to health care.

II. Ensure that the medical request process for inmates are adequate and provides inmates with adequate access to medical care.

## Medication Administration

I. Ensure treatment, and administration of medication(s) to inmates, is implemented in accordance with generally accepted professional standards or care.

## Staffing, Training And Supervision

I. Provide adequate staffing, training and supervision of employees, and not limited to medical staff necessary to ensure that adequate security and medical is provided..

Award the Plaintiff compensatory damages in an amount of Five-Hundred Thousand ($500.000) Dollars, to compensate the Plaintiff for injuries he has suffered under each cause of action.

Award the Plaintiff Punitive damages in an amount of Five-Hundred Thousand ($500.00) Dollars, under each cause of action.

Award Nominal damages in an amount to be determined under each cause of action that allows this Court to award.

Grant Plaintiff reasonable attorney's fees and cost(s) pursuant to 42 U.S.C. section 1988 and section 12205 and if applicable 29 U.S.C. section 794 a (b) and any other applicable law; and Grant such other and further relief as this Court deems necessary and proper.

Respectfully submitted

Ronald Harris
Reg: R58741
Pontiac Correctional Center
700 W. Lincoln Ave
Pontiac, Illinois 61764

Stateville C.C.
P.O. Box 112
Joliet, Ill 60434